MCINTOSH *v.* STATE OF INDIANA.

[No. 1169S265. Filed July 31, 1970. Rehearing denied September 10, 1970.]

*Charles W. Symmes,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *David S. Wedding,* Deputy Attorney General, for appellee.

HUNTER, C.J.—Appellant was charged by indictment in two counts with the crimes of rape and incest. Trial before the court resulted in a verdict of guilty as to the first count on the lesser included offense of assault and battery with intent to commit rape. Appellant's motion for discharge at the close of the state's case on the second count charging appellant with incest was sustained. Upon the court's verdict, appellant was sentenced to the Indiana State Prison for not less than one (1) nor more than ten (10) years.

The sole assignment of error alleged by appellant is the overruling of his motion for new trial. In such motion appellant asserts that the verdict of the trial court is not sustained by sufficient evidence and is contrary to law.

A brief review of the evidence most favorable to the state discloses the following facts: Brenda Sue McIntosh, the alleged victim, lived with her parents Wallace and Lorene McIntosh at 241 South Hancock Street in Indianapolis. At the time of the events in question, Brenda Sue was 15 years of age.

On the morning of March 11, 1969, Brenda Sue wanted to go to school, but because she had a sore throat, her father, the appellant refused to permit her to do so. Brenda Sue repeatedly insisted that appellant permit her to attend school since she had, according to her testimony, an important mathematics test on that day. Appellant refused. There was further evidence that Brenda Sue's youngest sister Roberta, also had a sore throat on that day but the appellant would not allow her to stay at home. Brenda Sue's brothers also wished to stay home but appellant refused to grant them permission either.

Appellant drove the other children to school and returned to the house at approximately 8:45 A.M. Upon his return, he changed into his pajamas and lay down to rest. No one but

appellant and his daughter Brenda Sue was home at this time. Mrs. McIntosh had left for work earlier that morning.

At sometime during the morning in question, Brenda Sue had taken a book to her bedroom and was sitting up in bed reading when appellant came into the room with a glass of vodka and orange juice. He presented it to his daughter with the assurance that after she drank it, she wouldn't even know that she had a sore throat. Brenda Sue had never had an alcoholic beverage before, and after tasting the drink presented to her by appellant, she decided she didn't want it. In spite of her disinclination to drink it, appellant insistently enjoined her to do so. When she gave him back the drink, he immediately returned it to her, insisting that she finish it. She finally did so.

Shortly thereafter appellant went back to the kitchen and returned with another drink. He assured Brenda Sue that it had hardly anything in it and so she drank it. She then lay down to sleep. At the time, she was dressed in jeans, a man's shirt, a brassiere and panties.

The next thing she remembered, Brenda Sue awoke and was fighting on the bed with her father. She managed to knock him off of the bed during the struggle and onto the floor. He had hit her across the face in the course of an argument and told her that she was just like her mother. She began screaming at him and he again hit her across the face. He then left the room.

Brenda Sue stated that after the encounter with her father, she noticed that she did not have her blue jeans on nor her underpants. She had them on earlier when she had gone to sleep.

Lorene McIntosh, wife of the appellant, testified that when she arrived home about 3:45 P.M. on March 11, 1969, she found her daughter in the following condition:

"She was on the back bedroom bed, her clothes were disheveled and torn, her underpants were tore [sic] in the

straddle and up around her waist where her brassiere was. Her jeans were unzipped, the blanket over her and under her was bloody. I got a cold washrag and woke her up and she began screaming."

David T. Johnson, an Indianapolis Police Officer, testified that on March 11, 1969, he went to appellant's home in response to a police radio call. When he arrived there he saw Brenda Sue sitting on the front porch. He noted that her face was flushed and had red splotches on it. According to Officer Johnson, Brenda Sue had a pair of blue jeans on that were unzipped in the front.

He entered the house and found appellant lying asleep on the davenport in the living room. Appellant was dressed in a T shirt and pajama bottoms which were torn in front and evidenced a bloodish red color around the opening.

Mrs. McIntosh stated that her daughter was not menstruating on the date in question. She further stated that when she visited her husband in jail after his arrest:

"He asked me to please drop the charges against him, that he knew he could get two to twenty-one years, that if I would drop it and not appear against him or not let Brenda, that he would leave the State; he would give me a divorce free and clear, pay for it, leave the State, I could have the house, everything, that all he wanted was out."

In looking at the sufficiency of the evidence, this court on appeal will examine only that evidence and the reasonable inferences deducible therefrom which are most favorable to the state. Carter v. State (1968), 250 Ind. 50, 234 N. E. 2d 850; Capps v. State (1967), 248 Ind. 472, 229 N. E. 2d 794; Beatty v. State (1963), 244 Ind. 598, 194 N. E. 2d 727. We will not weigh the evidence, nor determine the credibility of witnesses. Leaver v. State (1968), 250 Ind. 523, 237 N. E. 2d 368; Stock v. State (1966), 247 Ind. 532, 219 N. E. 2d 809.

Furthermore, a verdict of guilty in a criminal trial will be sustained on appeal, if each element of the crime or crimes

charged is established by substantial evidence of probative value, so as to convince the trier of fact of its existence beyond a reasonable doubt. *Manlove* v. *State* (1968), 250 Ind. 70, 232 N. E. 2d 874; *Easton* v. *State* (1967), 248 Ind. 338, 228 N. E. 2d 6; *Baker* v. *State* (1956), 236 Ind. 55, 138 N. E. 2d 641.

In this case appellant was convicted of assault and battery with intent to commit a felony, to-wit: rape, pursuant to Ind. Ann. Stat. § 10-401 (1956 Repl.) which reads:

> "Whoever perpetrates an assault or assault and battery upon any human being with intent to commit any felony other than a felonious homicide, shall, on conviction, be imprisoned in the state prison for not less than one (1) nor more than ten (10) years."

Appellant is challenging the sufficiency of the evidence going to the proof of his felonious intent to commit rape. It is appellant's argument that the most that can be proved from the evidence favorable to the state in the record is that appellant committed an assault and battery on his daughter. We disagree.

With respect to proving felonious intent, this Court has held that:

> "The State is not required to make proof of felonious intent, as a fact, by direct and positive evidence. The State is only required to produce such evidence as will satisfy the jury [or in cases tried before the court, the court] beyond a reasonable doubt that the assault and battery was committed by the defendant with the felonious intent charged in the affidavit. *Padgett* v. *State* (1885), 103 Ind. 550 at 551, 3 N. E. 337, at 337.

See also *Goodloe* v. *State* (1967), 248 Ind. 411, 229 N. E. 2d 626; *Hudson* v. *State* (1957), 236 Ind. 237, 139 N. E. 2d 917. We believe that the inference of intent is supported by substantial evidence of probative value in the record.

Intent is a mental function. It is impossible to know with

absolute certainty what was in appellant's mind during the morning of March 11, 1969, with respect to his daughter Brenda Sue. However a determination of his intent may be arrived at by the trial court from a consideration of the conduct and natural and usual sequence to which such conduct logically and reasonably points. *Byassee* v. *State* (1968), 251 Ind. 114, 239 N. E. 2d 586. Based on the evidence in this case we believe that the trial court could reasonably have found an intent to commit rape on the part of appellant.

In his brief appellant raises one other objection which, although not made a separate specification of error, should be disposed of here. The objection raised concerns certain questions propounded by the prosecution during the direct examination of Lorene McIntosh. The questions dealt with prior alleged acts of sexual misconduct on the part of appellant toward his daughters. Appellant objected to the questions during the trial which objections were in both instances *sustained* by the trial court. We fail to see how appellant was prejudiced thereby.

Furthermore, in order to save the question for appeal, appellant must have included the same in his motion for a new trial, otherwise it is waived. *Bucci* v. *State* (1968), 250 Ind. 670, 237 N. E. 2d 87. Appellant failed to do so.

In view of the above, we hold as a matter of law that the judgment of the trial court is sustained by sufficient evidence and is therefore not contrary to law. The judgment should in all things be affirmed.

Judgment affirmed.

Arterburn, DeBruler and Givan, JJ., concur. Jackson. J.. dissents.

Note.—Reported in 260 N. E. 2d 775.